**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

BARBARA LINDSAY,

    Plaintiff,

v.

DENVER PUBLIC SCHOOLS,
STEPHANIE DONNER,

    Defendants.

_____

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**
_____

Plaintiff, Barbara Lindsay, by and through her attorneys, Darold Killmer and Reid Allison of KILLMER, LANE & NEWMAN, LLP, herby files her Complaint and Jury Demand against Defendants Denver Public Schools ("DPS") and Stephanie Donner, and respectfully alleges as follows:

### I.    INTRODUCTION

1. Plaintiff Barbara Lindsay was a highly qualified Director of Workforce Development and Career Services at Emily Griffith Technical College ("EGTC"), a technical college affiliated with DPS.

2. In early 2019, Ms. Lindsay took part in the selection process for a new Executive Director of EGTC. During interview panel deliberations, Ms. Lindsay witnessed and objected to racially charged comments made by one of the panelists regarding a Black woman, Tisha Lee, who was a candidate.

3. Ms. Lindsay and other panelists agreed that Ms. Lee was one of the top two candidates, and Ms. Lee was scheduled for a final interview. However, DPS cancelled this interview and hired Defendant Donner, an unqualified white woman whom nearly all the panelists had ranked last, to be the new Executive Director.

4. When Ms. Lee asked Ms. Lindsay about the process, Ms. Lindsay was honest about what she had witnessed including the racial comments made about Ms. Lee's candidacy. Ms. Lee used this information to file charges of discrimination with the Colorado Civil Rights Division ("CCRD").

5. Within weeks of Ms. Lee filing her charge of race discrimination based on the information Ms. Lindsay provided, DPS and Stephanie Donner, the new Executive Director of EGTC, fired Ms. Lindsay in retaliation for opposing race discrimination.

6. After Defendants fired her, Ms. Lindsay filed her own charge of retaliation with the Colorado Civil Rights Division ("CCRD"). The CCRD thoroughly investigated Ms. Lindsay's charge and correctly issued a "cause" finding that DPS's stated reasons for firing Ms. Lindsay were "pretext for [DPS's] retaliatory motive" and that Ms. Lindsay had established a claim of discriminatory retaliation.

7. DPS's retaliatory termination of Ms. Lindsay violated the Colorado Anti-Discrimination Act ("CADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. §§ 1981 and 1983, and has caused and continues to cause Ms. Lindsay to suffer substantial injuries, damages, and losses.

## II.  PARTIES

8. At all relevant times, Plaintiff Barbara Lindsay was a resident of and domiciled in

the State of Colorado and was an employee of Defendant Denver Public Schools.

9. Defendant Denver Public Schools is a public school district in Denver, Colorado with its principal office at 1860 Lincoln Street, Denver, CO 80203. Defendant Denver Public Schools has continuously been an employer within the meaning of Title VII and CADA at all times relevant to this Complaint.

10. Defendant Stephanie Donner is a resident of and domiciled in the State of Colorado. Defendant Donner became employed by DPS in June 2019 when she was selected as the new Executive Director of EGTC. As Executive Director of EGTC, Defendant Donner was the final decisionmaker who fired Ms. Lindsay in retaliation for opposing race discrimination.

### III.   JURISDICTION AND VENUE

11. This action is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. §§ 1981 and 1983. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1367.

12. Jurisdiction supporting Plaintiff's claims for attorney's fees and costs is conferred by 42 U.S.C. §§ 2000e-5(k) and § 1988.

13. Venue is proper pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to the claim occurred in the District of Colorado.

### IV.   ADMINISTRATIVE PREREQUISITES

14. Plaintiff timely filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD"). The CCRD issued a cause finding in her favor, as well as a Notice of Right to Sue on her claim of retaliation.  Thus, all administrative prerequisites have been met.

## V.   STATEMENT OF FACTS

### *Ms. Lindsay was an exceptional employee for DPS.*

15.     Ms. Lindsay was hired by Emily Griffith Technical College[1] ("EGTC") on August 10, 2016, to be the Director of Workforce Development & Career Services.

16.     In her role as Director, Ms. Lindsay led all workforce-related activities, grants, and programs of the college.

17.     She managed a team of approximately twenty-eight employees and had approximately twenty-two direct reports.

18.     Ms. Lindsay was indisputably excellent at her job. All her performance evaluations were glowingly positive, and her peers and direct reports praised her work ethic and professionalism.

### *Ms. Lindsay helped select a new Executive Director of EGTC.*

19.     Indeed, Ms. Lindsay was such an exemplary Director and so well-respected and trusted that in January 2019, she was appointed to participate in the selection process for a new Executive Director ("ED") of EGTC.

20.     She helped draft the job description for the position and agreed with others that the ED needed experience in career and technical education, including experience in higher education and workforce development.

21.     Around April 8, 2019, Ms. Lindsay was a panelist tasked with interviewing the four remaining candidates for the ED position.

22.     The panel was provided an objective matrix on which to evaluate the candidates,

---

[1] EGTC is the largest technical college in Colorado, and its employees are employees of DPS.

and each candidate was asked a list of standardized questions.

23. During the panel's deliberations, a panelist made racially charged comments about the only candidate of color, Tisha Lee, a Black woman. This panelist questioned Ms. Lee's ability to raise funds even though Ms. Lee had significant fundraising experience.

24. The panelist also unjustifiably critiqued Ms. Lee's grammar and stated that as a Black woman, Ms. Lee should be held to a higher standard.

25. Ms. Lindsay vocally opposed these inappropriate, racist comments and urged that the panel disregard them in their consideration of Ms. Lee.

26. The DPS Human Resources representative who was present for the deliberations did not assure that the comments were not considered, and instead stated that she sympathized with and understood the panelist's comments.

27. Notwithstanding the racist comments made during deliberation, the panel selected Ms. Lee as one of the finalists to advance to the final interview. Ms. Lee was clearly one of the top two candidates, as she had worked for EGTC for over a decade and had twenty-seven years of experience in higher education and fifteen years of experience in career and technical education, as well as a demonstrated track record of collaboration with a variety of internal and external stakeholders.

28. Ms. Lee was informed that she had been selected as a finalist, but her interview was cancelled the day before it was scheduled. She was later told that she had not been selected as a finalist and two white candidates had instead been selected as finalists.

29. Knowing that Ms. Lindsay had been a panelist, Ms. Lee asked her about the process and what appeared to be disturbing procedural irregularities in the cancellation of her

5

finalist interview. Ms. Lindsay confirmed that Ms. Lee had been selected to advance to the final interview. Ms. Lindsay also truthfully informed Ms. Lee about the racist statements made during the panel's deliberations.

### *DPS retaliated against Ms. Lindsay after Ms. Lee filed an EEOC charge.*

30. Ms. Lee filed a charge of discrimination with the EEOC on April 26, 2019, alleging race discrimination in the ED selection process. Ms. Lee included in her charge that a panel member had informed her that she had initially been selected as a finalist.

31. In May 2019, Ms. Lindsay earned a raise of approximately $10,000 per year for her exemplary performance.

32. Later in May 2019, Ms. Lindsay learned that Stephanie Donner, a white woman, had been hired as the new ED of EGTC. Ms. Lindsay was surprised by this selection, because Defendant Donner had been ranked last by the panel, lacked higher education and community college experience, and stated during her interview that she was not sure if she could commit to the position full-time because she hoped to work for John Hickenlooper as his chief legal counsels while he ran for president.

33. Once hired as ED, Defendant Donner became Ms. Lindsay's direct supervisor.

34. Around May 23, 2019, Ms. Lindsay was a panelist for the hiring of a Career Advisor Employment Specialist. The panel selected Jason Bynum, a person with a disability who was clearly the most qualified.

35. The next day, one of the panelists spoke with Ms. Lindsay and informed her that she and another panelist had changed their minds and believe a different, non-disabled candidate was a better "fit" for EGTC and that Bynum did not represent the students.

36. Ms. Lindsay objected to this discriminatory and illegal discussion of refusing to hire a person because of his disability, and she informed the panelist that there were disabled students at EGTC, as well.

37. Because Ms. Lindsay was the hiring manager, she hired Bynum because he was unquestionably the most qualified candidate.

38. Upon information and belief, Defendant Donner met with Zach Hermsen (another EGTC Director) in late May 2019 and learned that Ms. Lindsay had objected to the racially biased comments during the panel's deliberations in the ED selection interview process and had provided Ms. Lee the information on which Ms. Lee based her EEOC charge.

39. Beginning on Defendant Donner's first official day at EGTC (around June 17, 2019), she was openly hostile to Ms. Lindsay and treated her differently and less favorably than her colleagues.

40. For example, at a team meeting early in her tenure, Defendant Donner interrogated Ms. Lindsay about her managing of her department and then argued with her about the information Ms. Lindsay provided in response. None of Ms. Lindsay's colleagues were questioned similarly.

41. Defendant Donner then made the decision that EGTC should no longer be involved with grant programs that Ms. Lindsay oversaw, even though the grants were bringing in money to the school and were generally thriving.

42. Around July 8, 2019, Ms. Lindsay was told that she was being investigated for "discrimination" and creating a "hostile work environment." Jo Neill and Tayseer Abdalla in EGTC's HR department informed her of the investigation but refused to give her any details,

7

except that it was based on a complaint made by a former employee, months after he had stopped working for EGTC.

43. The investigation was apparently based on an exit interview email that a former employee had sent directly to Defendant Donner instead of only to HR. This was highly unusual both in that the former employee sent it to the ED and that he did so well after his employment had ended. Employees in EGTC's HR department believed that the former employee was trying to manipulate the system.

44. These allegations were completely unfounded and were only given credence by the Defendant Donner as a tool to retaliate against Ms. Lindsay.

45. Around July 15, 2019, Ms. Lindsay met with Defendant Donner, and Defendant Donner made false accusations about her and one of her programs. When Ms. Lindsay attempted to reply, Defendant Donner raised her voice and cut her off.

46. Around July 18, 2019, Tisha Lee filed a charge of discrimination with the CCRD that was similar to, but more detailed than, her April EEOC charge.[2]

47. Around July 22, 2019, Ms. Lindsay was interviewed by HR representatives Neill and Abdalla regarding the complaint lodged against her. Ms. Lindsay was never given details about the allegations so that she could properly defend herself.

48. Around July 23, 2019, Ms. Lindsay told HR employee Abdalla that she was concerned about the investigation, as well as Defendant Donner's hostile and disparate treatment of her. Abdalla, who took part in all the investigation's interviews, told Ms. Lindsay that based

---

[2] Ms. Lee's case is now in federal court: *Lee v. Denver Public Schools*, Case No. 20-cv-01989-WJM-MEH. Pursuant to D.C.Colo.LCivR 3.2, Plaintiff will file a notice of related cases, as these cases involve the same Defendant and substantially similar, overlapping sets of facts.

on what she had seen in the process, Ms. Lindsay had nothing to worry about.

49. Later that day, Ms. Lindsay was asked to review notes from her interview. There were many inaccuracies in the notes, including most troublingly regarding what Ms. Lindsay had said. Ms. Lindsay made corrections and returned to HR. However, none of her corrections were accepted.

50. On July 31, 2019, approximately two weeks after Ms. Lee filed her CCRD charge and three months after she had filed her initial EEOC charge, both of which were based on information Ms. Lindsay had provided, Defendant Donner fired Ms. Lindsay.

51. At the meeting in which she was fired, Ms. Lindsay was provided, for the first time, with information about the claims against her. The claims were false and founded entirely on the former employee's unfounded claims.

52. The complaints were meritless on their face and came from a former employee who had never once complained about Ms. Lindsay during his three years of working at EGTC. Moreover, the former employee had no direct knowledge of the underlying facts for each false claim he made.

53. The investigation itself was fundamentally deficient in several ways, including failing to interview the most relevant actors, as DPS and Defendant Donner latched on to the meritless complaint as obvious pretext to fire Ms. Lindsay in retaliation for her opposition to race discrimination.

54. After years of exceptional service to EGTC, Ms. Lindsay was unceremoniously fired.

55. Her benefits were cut off the next day. This was a particularly cruel detail for Ms.

Lindsay, as she has muscular dystrophy and relied heavily on her health insurance coverage.

### *The CCRD finds cause that DPS fired Ms. Lindsay in retaliation for opposing race discrimination.*

56. After DPS and Defendant Donner fired her in retaliation for opposing race discrimination, Ms. Lindsay filed a charge of unlawful retaliation with the CCRD.

57. The CCRD conducted a lengthy and thorough investigation and issued a probable cause finding that DPS had fired Ms. Lindsay in retaliation for opposing race discrimination.

58. As part of this finding, the CCRD comprehensively but easily dispatched with each of DPS's proffered reasons for firing Ms. Lindsay, concluding that they were pretext "based on the unconfirmed and unfounded complaints of a disgruntled former supervisee" of Ms. Lindsay.

59. As a result of Defendants' unlawful, retaliatory conduct, Ms. Lindsay has suffered and will continue to suffer substantial injuries, damages, and losses.

## VI.   STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e,** *et seq.*
**Retaliation**
**(Against Defendant DPS)**

60. Plaintiff hereby incorporates all of the paragraphs of this Complaint as though fully set forth herein.

61. Ms. Lindsay was at all relevant times qualified to perform her job responsibilities and met or exceeded expectations

62. Ms. Lindsay believed in good faith that Defendant discriminated against Ms. Lee on the basis of her race.

63. Ms. Lindsay opposed Defendant's discriminatory treatment by speaking out against the race discrimination and providing Ms. Lee with the information to file her charge of race discrimination with the CCRD.

64. As a direct result of Ms. Lindsay's opposition to activities prohibited by Title VII, and her participation in proceedings governed by Title VII (i.e., her providing Ms. Lee information for her charge of discrimination), Defendant subjected Ms. Lindsay to materially adverse treatment, including but not limited to firing her.

65. Defendant's retaliation against Ms. Lindsay arose out of, was caused by, and was like and related to the discrimination Ms. Lindsay opposed.

66. Defendant treated Ms. Lindsay more adversely than her similarly situated counterparts who did not voice their opposition to Defendant's discrimination or participate in proceedings governed by Title VII.

67. Defendant's *post hoc* asserted non-discriminatory reasons for firing Ms. Lindsay were pretext for illegal retaliation and did not actually motivate Defendant's actions.

68. Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, retaliated against Ms. Lindsay and directly and proximately caused her injuries, damages, and losses.

69. Defendant's conduct was engaged in with malice or with reckless indifference to the federally protected rights of Plaintiff within the meaning of Title VII.

## SECOND CLAIM FOR RELIEF

### Retaliation under 42 U.S.C. §§ 1981 and 1983
### (Against Defendants DPS and Donner)

70. Plaintiff hereby incorporates all allegations contained in this Complaint as though

fully set forth herein.

71. Title 42 U.S.C. § 1983 ("Section 1983") is the jurisdictional vehicle appropriate to obtain relief against a state actor for a violation of Title 42 U.S.C. § 1981 ("Section 1981").

72. Ms. Lindsay engaged in activities and speech in opposition to employment practices prohibited by section 1981 by objecting to racial discrimination and providing Ms. Lee the information that was the foundation of her race discrimination charge in the CCRD and her subsequent lawsuit now pending in this Court.

73. Defendants treated Ms. Lindsay more adversely than her similarly situated counterparts who did not voice their opposition to discrimination.

74. Because of Ms. Lindsay's objections to race discrimination, Defendants subjected her to materially adverse treatment, including but not limited to firing her.

75. Defendants' retaliation against Ms. Lindsay arose out of, was caused by, and was like and related to the race discrimination Ms. Lindsay opposed.

76. Defendants' conduct was engaged in with malice or with reckless indifference to Ms. Lindsay's federally protected rights within the meaning of section 1981.

77. Defendants' retaliation against Ms. Lindsay was the direct and proximate cause of injuries, damages, and losses.

## THIRD CLAIM FOR RELIEF

**Colorado Anti-Discrimination Act, C.R.S. § 24-42-301,** *et seq*.
**Retaliation**
**(Against Defendants DPS and Donner)**

78. Plaintiff hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

79. Ms. Lindsay was at all relevant times qualified to perform her job responsibilities and met or exceeded expectations.

80. Ms. Lindsay vocally opposed DPS's racial discrimination against Ms. Lee, and Ms. Lindsay provided Ms. Lee the information to file her charge with the CCRD.

81. It is unlawful under the Colorado Anti-Discrimination Act for anyone to participate in discrimination by aiding, abetting, inciting, compelling, or coercing the doing of any discriminatory or unfair employment practice; to obstruct or prevent any person from complying with CADA; or to attempt, either directly or indirectly, to commit any act defined as discriminatory under CADA.

82. Defendant Donner participated in the retaliatory discrimination against Plaintiff by aiding, abetting, inciting, and otherwise causing the illegal termination of Ms. Lindsay, in violation of CADA.

83. As a direct result of Ms. Lindsay's opposition to activities prohibited by CADA, Defendants retaliated against Ms. Lindsay.

84. Defendants treated Ms. Lindsay more adversely than her similarly situated counterparts who did not voice their opposition to Defendant's discrimination.

85. Defendants' retaliation against Ms. Lindsay arose out of, was caused by, and was like and related to the discrimination Ms. Lindsay opposed while she was employed.

86. Defendants' retaliation included, but was not limited to, subjecting Ms. Lindsay to heightened scrutiny and ultimately firing her.

87. Defendant DPS is liable for the acts and omissions of its agents and employees.

88. Defendants' conduct was the proximate cause of Ms. Lindsay's injuries, damages,

and losses.

89.     Defendants' conduct was engaged in with malice and with reckless indifference to the protected rights of Ms. Lindsay within the meaning of CADA.

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, in an amount to be determined by a jury following a trial, and award her all relief allowed by law and equity, including, but not limited to, the following:

a. Declaratory relief, injunctive relief and/or other equitable relief, as appropriate;

b. Actual economic damages, including, but not limited to, front pay and back pay damages, as established at trial;

c. Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

e. Pre-judgment and post-judgment interest at the highest lawful rate;

f. Attorney's fees and costs; and

g. Such further relief as justice requires or the law allows.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ISSUES SO TRIABLE.**

Respectfully submitted this 24th day of November 2020.

                                                     KILLMER LANE & NEWMAN, LLP

                                                     *s/ Darold W. Killmer*
                                                     _____
                                                     Darold W. Killmer
                                                     Reid Allison
                                                     1543 Champa Street, Ste. 400
                                                     Denver, CO 80202

(303) 571-1000
(303) 571-1001 fax
dkillmer@kln-law.com
rallison@kln-law.com

*Counsel for Plaintiff*

15