IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 20-cv-03477-CMA-MEH

BARBARA LINDSAY,

    Plaintiff,

v.

DENVER PUBLIC SCHOOLS, and
STEPHANIE DONNER,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendants' Amended Motion for Summary Judgment (Doc. # 51). For the following reasons, the Court grants the Motion and enters summary judgment in favor of Defendants.

**I.    BACKGROUND[1]**

This case arises from Plaintiff Barbara Lindsay's termination from employment at Defendant Denver Public Schools (the "District"). Plaintiff was the Director of Workforce and Development at Emily Griffith Technical College ("EGTC") from August 10, 2016, to July 31, 2019. (Doc. # 51-1 at 2.) She alleges that her termination was in retaliation for opposing discrimination in the hiring process for the Executive Director position at EGTC in early 2019.

---

[1] Unless otherwise indicated, the following facts are undisputed.

### A.     THE EXECUTIVE DIRECTOR HIRING PROCESS

In early 2019, EGTC's Executive Director resigned, and the District began its search for a new Executive Director. (*Id.* at 39.) In the first part of the selection process, the District's then-Chief Operating Officer, David Suppes, met with four candidates. (*Id.* at 134.) He advanced all four candidates to the next selection phase, which consisted of two different panel interviews. (*Id.*) Tisha Lee, a black woman, was the Director of Student Services at EGTC and one of the four candidates advanced to panel interviews. (*Id.*) The parties dispute whether Suppes had "pre-selected" a different candidate, Defendant Stephanie Donner, as his choice regardless of the panel interviews and whether he genuinely considered Lee for the position. *See* (Doc. # 56 at 3.)

Plaintiff was a panelist on the second panel along with Zach Hermsen, Director of Finance and Operations and Interim Executive Director of EGTC; Tatiana Hernandez, EGTC Foundation President and CEO; and four other panelists. (Doc. # 51-1 at 3.) After the interviews, the panelists held a "debrief" conversation where they discussed the candidates. (*Id.* at 4.) During the debrief, Hernandez "raised a concern that Ms. Lee's grammar was a concern and that being a person of color, she should be held to a higher standard." (*Id.*) Hernandez also questioned Lee's fundraising ability, although the parties dispute whether the fundraising comments were related to Lee's race. *See* (Doc. # 51 at 6; Doc. # 56 at 4.) When Hernandez finished speaking, Plaintiff "spoke up" for Lee and stated that she had worked with Lee, that Lee was always professional, and that the comments about her grammar should be "disregarded." (Doc. # 51-1 at 4.)

Plaintiff also stated that she attended fundraising events with Lee and that Lee had fundraising connections and could bring in funds to EGTC. (*Id.*)

Plaintiff made notes of these comments during the meeting, however, all of the actual notes taken during the interview (including Plaintiff's) were likely destroyed. (Doc. # 56 at 4.) Nicole Kramis, the District's Executive Recruiter, prepared summary notes of the debrief interview, which Suppes later reviewed. (Doc. # 51-1 at 134–135.) With respect to Lee, the debrief document states, among other notes: "She oversold the amount of fundraising she does" and "[d]oesn't have the polish we need in this position. She is not quite there yet." (Doc. # 56-1 at 95.)

The first panel recommended another candidate, Beth Bean, and Donner as the top two candidates, while the second panel recommended that Bean and Lee advance to the next interview. (Doc. # 51-1 at 6.) Suppes's Administrative Assistant, Sally Bustamante, invited Lee to the final interview without consulting Suppes. (*Id.* at 134–35.) Suppes then made the decision to advance Bean and Donner, not Lee, to the final round of interviews with then-Superintendent Susana Cordova and then-Assistant Superintendent Tamara Acevedo. (*Id.* at 135.) After Suppes made that decision, Lee was notified that she was not invited to the final interview. (*Id.* at 150.) Donner was hired as EGTC's new Executive Director after the final round of interviews. (*Id.* at 8.)

When Plaintiff learned that Lee had been uninvited to the final interview, Plaintiff told Lee about the comments Hernandez made during the debrief after the second panel interview. (*Id.* at 7.) Lee filed an initial charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC") on April 26, 2019, and a second charge of discrimination on July 18, 2019. (*Id.* at 124.)

**B.     DEFENDANTS' KNOWLEDGE**

The parties dispute whether Defendants had knowledge of Plaintiff's objections to Hernandez's comments or of the fact that Plaintiff provided information to Lee to use in her discrimination charges. In her EEOC charges, Lee indicated that a "panelist" told her that she was one of the top two candidates for the Executive Director position and that a different panelist made racist comments. (*Id.* at 126, 132.) However, Lee did not use Plaintiff's name or otherwise identify Plaintiff in either charge as the person who provided her with information about Hernandez's comments. (*Id.* at 124.) Lee also did not tell anyone at the District that Plaintiff was the person who provided her with information about the second interview process. (*Id.* at 125.)

Hermsen, who had been serving as Interim Executive Director and was present at the second panel interview debrief when the comments were made, had several meetings with Donner after she began at EGTC to transition the Executive Director role to her. (*Id.* at 40.) Plaintiff was not at these meetings and does not know what was discussed. (*Id.* at 9.) Hermsen did not tell Donner about Hernandez's comments from the second panel interview debrief and did not discuss the EGTC hiring process with Donner at all. (*Id.* at 40.) Further, Hermsen did not know about Lee's discrimination charges or that Plaintiff provided information to Lee that Lee used in those charges. (*Id.*)

Prior to Plaintiff's termination, Donner did not know that Plaintiff had objected to comments made by Hernandez during the second panel interview debrief. (*Id.* at 17.)

Donner also did not know that Plaintiff provided information to Lee that Lee used to file discrimination charges. (*Id.*) Donner learned about the EEOC charges in August or September 2019, after Plaintiff's termination, and she learned that Plaintiff provided Lee information for those charges in October 2019. (*Id.*) Plaintiff contends that before she was terminated, Donner was "hostile" to her and "singled her out for adverse treatment as compared to others." (Doc. # 56 at 13.) Defendants dispute that Plaintiff was singled out because several other EGTC employees also stated that Donner was rude and dismissive to them. (Doc. # 62 at 3.)

**C.   PLAINTIFF'S TERMINATION**

On July 2, 2019, Hermsen, Donner, Human Resources Business Partner Jo Caldwell (formerly known as Jo Neill), and another EGTC human resources employee, Tayseer Abdalla, received a complaint from former EGTC employee, Jacob Vigil. (Doc. # 51-1 at 40.) Before he resigned, Vigil was one of Plaintiff's direct reports. (*Id.*) Vigil alleged that Plaintiff subjected him to a hostile work environment, discriminated against Hispanics, paid a Caucasian employee, Byron O'Bayley, for work he did not perform, and interfered with the hiring process for a position on her team. (*Id.*)

Hermsen directed Caldwell to investigate the complaint. (*Id.*) Caldwell interviewed Vigil, Plaintiff, and at least five other Career Services employees who had worked with Vigil and Plaintiff. (*Id.* at 52.) Caldwell also reviewed emails and financial reports related to O'Bayley's pay that were provided to her by Hermsen and a finance employee, Travis Peterson. (*Id.*) Following her investigation, Caldwell made preliminary

5

findings that Plaintiff misused the organization's funding, conducted herself unprofessionally, and interfered with the integrity of a hiring process. (*Id.* at 52.)

The material facts regarding O'Bayley's pay and any related investigation are significantly disputed. Caldwell believed that Plaintiff misused EGTC's funding by improperly allowing O'Bayley to receive pay for work he did not perform. (*Id.*) Her belief was based on the fact that O'Bayley did not work in the career services department during a period of time in April and May 2019, but the financial documents Caldwell reviewed indicated that O'Bayley nonetheless received pay for his career services position during that time. (*Id.*) Caldwell's understanding was that Plaintiff directed O'Bayley to log his hours in this manner and that Plaintiff had final authority to approve O'Bayley's payroll submissions, which she did. (*Id.*) Plaintiff disputes that any overpayment occurred or that the investigation even considered this question, and she contends that no money was ever sought returned from O'Bayley and no overpayment was proven. (Doc. # 56 at 8.)

Based on the interviews she conducted, Caldwell also determined that Plaintiff was unprofessional and exhibited favoritism towards certain colleagues, including O'Bayley. (Doc. # 51-1 at 52.) In evaluating Vigil's complaint, Caldwell was aware of allegations that Vigil stole files from EGTC before he resigned. (*Id.*) She was also aware that before Vigil stopped working at EGTC, he had hoped to go on a work trip to Orlando, Florida, and Plaintiff told him it would be improper to go on the trip because of his impending resignation. (*Id.*) Nevertheless, Caldwell determined that Vigil was a credible witness because other witnesses backed up some of his allegations. (*Id.*)

However, Caldwell did not find enough evidence to substantiate Vigil's allegation that Plaintiff discriminated against Hispanic employees. (*Id.* at 52–53.)

Finally, Caldwell believed that Plaintiff interfered with an EGTC hiring process (different from the hiring process described above) because Plaintiff encouraged members of the hiring committee to hire her former colleague, Jason Bynum, who was blind, by sending out an email to the hiring committee explaining the benefits of hiring disabled employees. (*Id.*) Caldwell thought this was improper because Plaintiff was a director-level employee and Caldwell "believed [Plaintiff's] subordinates on the hiring committee would not feel comfortable expressing their true opinions in light of [Plaintiff's] email." (*Id.* at 53.) Plaintiff disputes that the email was improper in any way.

During the time of her investigation, Caldwell knew that Lee had filed a charge of discrimination. (*Id.*) Caldwell did not know that Plaintiff objected to Hernandez's comments or that Plaintiff provided evidence to Lee that Lee used for her EEOC charges. (*Id.*) Caldwell consulted with the District's human resources and legal departments about her preliminary findings, and Caldwell drafted a termination letter and presented the investigation findings to Donner. (*Id.*) The termination letter stated that Plaintiff (1) misused organization funds; (2) engaged in unprofessional conduct; and (3) interfered with the integrity of the hiring process. (*Id.* at 52–53.) Donner presented the termination letter to Plaintiff and notified her of her termination, which was effective immediately, on July 31, 2019. (*Id.* at 17–18.)

D.    **PROCEDURAL HISTORY**

Plaintiff initiated this case on November 24, 2020. (Doc. # 1.) She alleges three claims for relief: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (against the District); (2) retaliation in violation of 42 U.S.C. §§ 1981 and 1983 (against Donner); and (3) retaliation in violation of the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-301, *et seq.* (against the District).[2] Defendants filed the instant Amended Motion for Summary Judgment (Doc. # 51) on March 2, 2022. Plaintiff filed her Response (Doc. # 56), and Defendants submitted their Reply (Doc. # 62). The matter is now ripe for review.

II.    **LEGAL STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture,

---

[2] The Court previously dismissed Plaintiff's section 1981 retaliation claim against the District for failure to state a municipal liability claim under Fed. R. Civ. P. 12(b)(6) and her CADA retaliation claim against Donner for failure to exhaust administrative remedies under Fed. R. Civ. P. 12(b)(1). (Doc. ## 32, 33.)

speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671.

### III. DISCUSSION

Defendants move for summary judgment on the basis that Plaintiff cannot establish two of the elements of a prima facie retaliation claim: that she engaged in

protected opposition to discrimination and that a causal connection exists between the protected activity and the adverse action. (Doc. # 51 at 5, 8.) In addition, Defendants argue that Plaintiff cannot demonstrate that the District's articulated reason for terminating her employment is mere pretext for discrimination. (*Id.* at 16.) Finally, Donner argues that she is entitled to qualified immunity on Plaintiff's 42 U.S.C. § 1981 claim.[3] (*Id.* at 17.) The Court begins with the prima facie retaliation claim analysis.

### A.   PRIMA FACIE RETALIATION CLAIM

Because the test for establishing a prima facie case of retaliation is the same under Title VII, CADA, and section 1981, the Court will evaluate the claims in one prima facie analysis. *See Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008) ("The test for establishing a prima facie case for retaliation is the same under both Title VII and 42 U.S.C. § 1981."); *Agassounon v. Jeppeson Sanderson, Inc.*, 688 F. App'x 507, 509 (10th Cir. 2017) (unpublished) ("CADA discrimination and retaliation claims are subject to the same legal standards as Title VII claims.").

A plaintiff establishes a prima facie case of retaliation by showing: (1) she engaged in protected opposition to discrimination; (2) she was subject to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234 (10th Cir. 2000). If a plaintiff establishes a prima facie case of retaliation, the burden

---

[3] In an apparent oversight, Defendants also argue that summary judgment is warranted on Plaintiff's 42 U.S.C. § 1981 claim against the District. Because the Court already dismissed that claim, the portions of the Motion and Response that address that claim are irrelevant and the Court declines to consider them.

shifts to the employer to articulate a legitimate and non-discriminatory reason for the adverse employment action. *Sozoma*, 513 F.3d at 1212. Once the employer has satisfied its burden, the plaintiff must show that the employer's legitimate reason is merely pretext for retaliation. *Id.*

With respect to the first element, a retaliation claim is actionable only if the retaliation by the employer is because the employee "has opposed any practice made an unlawful employment practice by [Title VII]." *Petersen v. Dep't of Corr.*, 301 F.3d 1181, 1188 (10th Cir. 2002) (quoting 42 U.S.C. § 2000e-3). "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). As such, "an employee's complaints regarding unfair treatment, no matter how unconscionable, cannot be 'protected opposition to discrimination' unless the basis for the alleged unfair treatment is some form of **unlawful** discrimination." *Dean v. Comput. Sci. Corp.*, 384 F. App'x 831, 839 (10th Cir. 2010) (unpublished).

The third element requires that Plaintiff demonstrate "a causal connection between the protected activity and the adverse employment action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001). "An employer's action against an employee cannot be **because** of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition." *Petersen*, 301 F.3d at 1188; *see also Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) (holding that to demonstrate a causal connection, a plaintiff must show that the individual who took

adverse action against her knew of the employee's protected activity). Stated differently, it is "crucial" whether the District and Donner "knew that [Plaintiff] was engaging in protected opposition." *Petersen*, 301 F.3d at 1188.

Defendants do not dispute the second element of Plaintiff's prima facia retaliation claim (that her termination constituted an adverse employment action). However, Defendants assert that they are entitled to summary judgment because the undisputed material facts show (1) that Plaintiff did not engage in protected conduct when she "objected" to a panelist's comments; and (2) that there is no causal connection between any protected activity and the adverse action because no District or EGTC official involved in Plaintiff's termination knew of Plaintiff's alleged protected activity. (Doc. # 51 at 8.) Plaintiff responds that she clearly engaged in protected activity by objecting to racist comments in the hiring process for EGTC's new Executive Director and by providing information to Lee in support of her charges for discrimination. (Doc. # 56 at 4–5.) She further argues that "circumstantial evidence" establishes a causal connection between her protected activity and her termination. (*Id.* at 5.)

The parties dispute several facts relating to the first element, including whether Hernandez's comments about fundraising were related to Lee's race and whether Plaintiff's statement that the comments about grammar be "disregarded" was, in the context of the meeting, a clear objection to race discrimination in the hiring process. Nevertheless, the Court need not decide whether Plaintiff's comments were sufficient to qualify as protected opposition because the Court finds that Plaintiff's retaliation claim fails on the causal connection element. *See Hinds*, 523 F.3d at 1203 ("We need not

resolve definitively whether these constituted protected activities, however, because the retaliation claim based on them clearly fails on the casual connection element."").

Upon carefully reviewing the Motion, the relevant briefing, and all the evidence attached thereto, the Court finds that the undisputed evidence demonstrates that no District or EGTC official connected with Plaintiff's termination knew that Plaintiff objected to Hernandez's comments or provided information for Lee to use in her discrimination charges. In her Declaration, Donner stated:

> I met with Lindsay on July 31, 2019 and notified her of her termination. As of that date, I did not know that Lindsay had "objected" to comments made about Lee by one of the panel members, Tatiana Hernandez, during the second panel interview debrief. Nor did I know that Lindsay had provided information to Lee that Lee used to file discrimination charges. In fact, I did not know that Lee had filed any discrimination charges until August or September 2019, after Lindsay's termination, when I was asked by the District's counsel to provide information related to my work at Galvanize. I first learned that Lindsay provided information to Lee that Lee used in her discrimination charge when Lindsay filed her retaliation charge with the CCRD in October 2019. In sum, I did not know that Lindsay had engaged in any protected activity until after her employment had been terminated.

(Doc. # 51-1 at 17–18.) Similarly, Caldwell—who conducted the investigation into Jacob Vigil's complaint and prepared Plaintiff's termination letter—stated in her Declaration:

> Tisha Lee, an African-American woman who was the Director of Student Services in early 2019 and is currently employed as EGTC's Vice President of Student Services, applied for EGTC's Executive Director position. She was not selected for the position. Lee told me that she filed a charge of discrimination. Lee did not tell me that Lindsay provided her with information that she used in filing that charge, nor was I otherwise aware that Lindsay had done so. Nor did I know that Lindsay had allegedly objected to discrimination in the hiring process for EGTC's Executive Director. As a result, at the time I investigated Vigil's allegations against Lindsay, I did not know that Lindsay objected to discrimination or that she provided information to Lee.

13

(*Id.* at 53.) Finally, Hermsen, who had been present at the interview debrief when Plaintiff objected to the comments and who met with Donner frequently after she started as Executive Director, stated in his Declaration that prior to Plaintiff's termination, he did not know that Lee had filed discrimination charges and he never discussed with Donner anything about the EGTC Executive Director Hiring Process, including that Hernandez had made comments or that Plaintiff had objected to them. (*Id.* at 39–40.)

Plaintiff provides no evidence disputing the material facts in these Declarations. However, Plaintiff argues that "ample circumstantial evidence" demonstrates that Donner likely knew about Plaintiff's protected activity, including (1) Hermsen had "every opportunity" to tell Donner about Plaintiff's objections in their frequent meetings; (2) Donner "singled out" Plaintiff after Lee filed her first charge and fired Plaintiff around two weeks after Lee filed her second charge; (3) Donner made the decision to fire Plaintiff after consulting with the District's legal department, which at the time was aware of Lee's charges of discrimination; and (4) temporal proximity supports a strong inference of retaliatory motive. (Doc. # 56 at 7, 11, 16). Having carefully reviewed the record, the Court finds that none of Plaintiff's arguments are availing.

First, Plaintiff's assumption that Hermsen had "every opportunity" to tell Donner about Plaintiff's objections is mere speculation. In the absence of any evidence that Hermsen told Donner about Plaintiff's objections—and in the face of Hermsen's sworn Declaration that he did not tell Donner anything about the EGTC Executive Director hiring process, Plaintiff's objections, or Lee's discrimination charges—the Court finds that Plaintiff has not shown a genuine dispute of material fact as to whether Hermsen

14

told Donner about any alleged protected activity. *See Wickman v. Henderson*, 19 F. App'x 740, 743 (10th Cir. 2001) (holding that there was no legally sufficient evidentiary basis for a jury to find that two supervisors knew about allegedly protected activity when both supervisors testified that they were unaware of the protected activity, even though plaintiff saw a person who knew about her protected activity have a meeting in a supervisor's office and believed that the supervisors' attitudes "changed from friendly and open to hostile" after that meeting) (unpublished).

Next, although Plaintiff asserts that Donner "treated [her] with outright hostility" and "singled her out" after Lee filed her first discrimination charge (Doc. # 56 at 17), the Court notes that several other employees also reported that Donner was rude and dismissive to them. In his Declaration, Hermsen stated that he "felt that Donner did not respect my time" and that Donner would often accept phone calls or check text or emails when they were in a meeting, or walk out of the meeting, which Hermsen described as "off-putting." (Doc. # 51-1 at 40.) Hermsen also testified at his deposition that some members on his team "were taken aback by [Donner's] style," that they expressed concerns about Donner, and that he "didn't think they felt she was always incredibly compassionate or human or connected with them." (Doc. # 56-1 at 47.) Similarly, Caldwell stated that she "did not believe Donner was a good leader" and that Donner was "not very friendly" and "was sometimes very rude to me." (Doc. # 51-1 at 53.) Donner's supervisor, Senior Executive Director of Career and College Readiness Bernard McCune, testified that "there was a complaint about how [Donner] spoke to some employees, particularly front office staff" and that some staff complained that

15

Donner was abusive or disrespectful to them. (Doc. # 56-1 at 75.) Given this evidence, the Court finds there to be insufficient support for Plaintiff's assertion that she was "singled out" by Donner such as to establish an inference of retaliatory motive.

      Plaintiff also contends that Defendants likely knew about Plaintiff's protected activity because Donner consulted with the District's legal department regarding Plaintiff's termination and, at that point in time, the legal department was aware of and responding to Lee's discrimination charges. (Doc. # 56 at 10, 17.) The Court is similarly unpersuaded by this argument. Although Plaintiff repeatedly argues that the legal department was aware of Lee's charges during the relevant time period, Plaintiff cites to no evidence in the record showing that the legal department knew of or was responding to Lee's charges. *See Adler*, 144 F.3d at 671 (to meet her burden, Plaintiff must set forth specific facts that would be admissible and identify those facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein"). Instead, Plaintiff argues that Donner's statement is "self-serving" and that a jury should determine matters of witness credibility and be free to reject Donner's and Hermsen's contrary testimony. (*Id.* at 7, 17.) In so arguing, Plaintiff misunderstands the standard that must be applied by this Court in evaluating a motion for summary judgment. Plaintiff is correct that "the jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 551 (10th Cir. 1999). However, "[a]lthough a jury is entitled to draw reasonable inferences from circumstantial evidence,

reasonable inferences themselves must be more than speculation and conjecture." *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir. 1987). Because Plaintiff points only to "circumstantial evidence" and speculation about Defendants' knowledge, the Court finds that Plaintiff has failed to establish a genuine dispute of material fact as to whether Defendants knew about Plaintiff's protected activity.

Finally, Plaintiff contends that "temporal proximity supports a strong inference of retaliatory motive" because only two weeks passed between Lee filing her second charge of discrimination and Donner firing Lee's main witness, Plaintiff. (Doc. # 56 at 16.) The Tenth Circuit has held that a causal connection "may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *O'Neal*, 237 F.3d at 1253 (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *Id.* Although Plaintiff is correct that Lee filed her second charge of discrimination two weeks prior to Plaintiff's termination, the Court notes that other alleged protected conduct, including Plaintiff's objection to Hernandez's comments and Lee's first discrimination charge, occurred in April 2019, at least three months prior to Plaintiff's termination. (Doc. # 51-1 at 124; Doc. # 56-1 at 91.) Under these circumstances, and in light of the undisputed evidence from Hermsen's and Donner's Declarations and depositions showing that Defendants did not have any knowledge of protected conduct, the Court finds that "temporal proximity" is insufficient in this case to establish causation. *See Villamar v. Lincare, Inc.*,

624 F. App'x 658, 661–62 (10th Cir. 2015) (holding that temporal proximity is insufficient to support the causation element where the decision-maker had no knowledge of the protected activity) (unpublished); *see also Hinds*, 523 F.3d at 1203 ("As a prerequisite to showing a causal connection, a plaintiff "must first come forward with evidence from which a reasonable factfinder could conclude that those who decided to fire him had knowledge of his protected activity"); *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct.").

Construing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has not presented sufficient evidence to establish either a genuine dispute of material fact as to Defendants' knowledge of her alleged protected conduct or an inference of retaliatory motive for her termination. As such, Plaintiff has not demonstrated a triable issue as to whether a causal connection exists between the alleged protected activity and termination. Because Plaintiff has failed to meet her burden of establishing a prima facie claim of retaliation, Defendants are entitled to summary judgment on her retaliation claims and the Court need not evaluate pretext.

**B.    QUALIFIED IMMUNITY**

Donner also argues that she is entitled to qualified immunity with respect to Plaintiff's section 1981 retaliation claim. "When a defendant asserts qualified immunity in a motion for summary judgment, the burden shifts to the plaintiff who must satisfy a

heavy two-part burden. The plaintiff must show the defendant's conduct violated a constitutional right, and the right was clearly established at the time of the defendant's conduct." *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010) (citations omitted). For the reasons detailed above, the Court finds that Plaintiff has failed to satisfy her burden of showing that Donner's conduct violated a constitutional right. Because Plaintiff provided no evidence that Donner was aware of Plaintiff's alleged protected activity, she has not shown that Donner retaliated against her **because** of her protected activity in violation of her constitutional rights. Donner is therefore entitled to qualified immunity on Plaintiff's second claim for relief.

## IV.    CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' Amended Motion for Summary Judgment (Doc. # 51) is GRANTED. It is

FURTHER ORDERED that judgment shall enter in favor of Defendants Denver Public Schools and Stephanie Donner and against Plaintiff Barbara Lindsay. It is

FURTHER ORDERED that the Final Trial Preparation Conference set for November 29, 2022, and ten-day Jury Trial set for January 9, 2023, are VACATED.

The Clerk of Court is directed to close this case.

DATED:  October 26, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge